Ahmad S. Takouche (CA Bar # 322911)
ATakouche@stradlinglaw.com
**STRADLING YOCCA CARLSON & RAUTH LLP**
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Tel: (949) 725-4000

Erik Swenson (*pro hac vice* pending)
ESwenson@stradlinglaw.com
**STRADLING YOCCA CARLSON & RAUTH LLP**
500 W. 2nd Street, Suite 1900
Austin, TX 78701
Tel: (512) 788-5015

*Attorneys for Plaintiff K&N Engineering, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| *K&N Engineering, Inc.*, Plaintiff,<br><br>vs.<br><br>*Advanced Flow Engineering, Inc.*, Defendant. | Civil Action No. 5:26-cv-6177<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY**<br><br>**JURY DEMAND** |

Plaintiff K&N Engineering, Inc. ("K&N") brings this complaint against Defendant Advanced Flow Engineering, Inc. ("Defendant").

## THE PARTIES

1. K&N is a California Corporation with a principal place of business located at 14 Longitude Way, Corona, CA 92881.

2. On information and belief, Defendant Advanced Flow Engineering, Inc. is a California corporation with its principal place of business located at 1375 Sampson Ave., Corona, CA 92879, and identifies its registered agent for service at the California Secretary of State as Kathleen Niakan located at 1375 Sampson Ave, Corona, CA, 92879.

## NATURE OF THE ACTION

3. This is an action for declaratory judgment of patent non-infringement and patent invalidity arising under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

4. An actual, justiciable controversy exists between K&N and Defendant concerning U. S. Patent No. 9,440,175 ("'175 Patent") (Exhibit 1), entitled "Interface Air Filter and Assembly", which issued on September 13, 2016, and is owned or controlled by Defendant.

5. K&N seeks a judicial declaration that K&N's products—including without limitation its NextGen Cold Air Intake System, Model No. 50-9039 (the "Accused Product")—do not infringe any valid, enforceable claim of the '175 Patent, directly or indirectly, and that the claims of the '175 Patent are invalid under one or more provisions of 35 U.S.C. §§ 101, 102, 103, and/or 112.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the claims herein under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202. An actual, substantial, and justiciable controversy exists between K&N and Defendant within the meaning of 28 U.S.C. § 2201. Specifically, on September 10, 2026, Defendant, through its legal counsel Zeppos Law Group LLP, sent a formal Cease and Desist letter (Exhibit 2) to K&N accusing K&N's NextGen Cold Air Intake System (Model No. 50-9039) of infringing at least Claims 1 and 2 of the '175 Patent. Defendant

explicitly threatened litigation seeking injunctive relief, lost profits, reasonable royalties, enhanced damages for willful infringement, and attorneys' fees under 35 U.S.C. §§ 284–285 unless K&N entered into a patent license, modified its design, or ceased sales within 30 days.

7. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(b).

8. Personal jurisdiction over Defendant is proper in this District pursuant to Fed. R. Civ. P. 4(k) and California Code of Civil Procedure § 410.10 because Defendant is incorporated in California, resides in this District, and maintains its principal place of business within the Central District of California.

**THE '175 PATENT**

9. The '175 Patent, entitled "Interface Air Filter and Assembly," was issued by the United States Patent and Trademark Office ("USPTO") on September 13, 2016, naming Shahriar Nick Niakan and Christian Luc Landel as inventors. During prosecution of Application No. 13/694,159 (which matured into the '175 Patent), the USPTO rejected the claims over prior art under 35 U.S.C. §§ 102 and 103, including U.S. Patent No. 7,645,329 ("*Niakan*")(Exhibit 3), US 2006/0260469 ("*Miyagishima*") (Exhibit 4), US 5,275,636 ("*Dudley*") (Exhibit 5), and US 5,487,767 ("*Brown*") (Exhibit 6). To overcome these prior art rejections and secure allowance, the Defendant made key structural narrowing amendments and explicit legal arguments to the USPTO. Specifically, Defendant amended independent claims 1 and 2 to add the explicit requirement that the outer surface of the reducing coupling's first engaging member has "a plurality of circumferential ridges extending outwardly from the outer surface to engage an air intake port of a housing." Defendant repeatedly argued to the USPTO that these outward circumferential ridges on the outer surface (e.g., element 121 in Figure 5) were a critical distinguishing feature over prior art combinations where ridges were located internally or absent altogether. Under the doctrine of prosecution history estoppel, the '175 Patent is strictly limited by these amendments and representations, and is estopped from alleging infringement under the Doctrine Of Equivalents ("DOE").

## FACTUAL BACKGROUND

10. K&N Engineering, Inc. is a premier global brand in performance automotive filtration and air intake technology. Headquartered in Riverside, California, the company is globally renowned for pioneering reusable high-flow filtration systems designed to optimize engine performance and horsepower.

11. Founded in 1969 by Ken Johnson and Norm McDonald (whose initials form the "K&N" name) as a motorcycle performance shop, the company quickly evolved into a leading innovator in automotive filtration.

12. K&N revolutionized the industry by inventing the world-famous washable cotton-gauze High-Flow Air Filter™, providing superior airflow and engine protection over standard disposable paper filters. Beyond its iconic air filters and cold air intake kits, K&N manufactures premium oil filters, cabin air filters, and specialized performance products across thousands of vehicle applications. Deeply rooted in racing culture, K&N has been a long-standing partner and supplier across major motorsports disciplines, including NASCAR, NHRA, and Formula Drift.

13. On September 10, 2026, Defendant served a formal Cease and Desist letter asserting infringement and demanding that K&N cease sales or take a license on Model No. 50-9039 (NextGen Cold Air Intake). K&N denies Defendant's allegations. Model No. 50-9039 does not infringe the '175 patent because, for mere example, it does not incorporate the "plurality of circumferential ridges" required by each independent claim of the '175 Patent. Instead, K&N's product utilizes a smooth-surfaced coupling design, directly reflecting prior art concepts long known and used in the automotive intake industry prior to the '175 Patent's filing date. Additionally, to the extent Defendant asserts that the '175 Patent's claims can be broadly construed to cover coupling interfaces without outward circumferential ridges, the claims are invalid under 35 U.S.C. §§ 102 and/or 103 as anticipated or rendered obvious by prior art air filter and intake coupling structures, including prior art designs established prior to November 1, 2012. Defendant's direct litigation threats have created an immediate, real, and justiciable controversy between K&N and Defendant.

**FIRST CAUSE OF ACTION**

**(Declaratory Judgment of Non-Infringement of the '175 Patent)**

14. K&N re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

15. K&N has not infringed, does not infringe, and will not infringe—either directly, indirectly, contributorily, or by inducement—any valid and enforceable claim of the '175 Patent, literally or under the DOE. Specifically, K&N's NextGen Cold Air Intake System (Model No. 50-9039) lacks, for example, the essential limitation of a reducing coupling with a first engaging member having a "plurality of circumferential ridges extending outwardly from the outer surface" where "the first engaging member outer surface extends outwardly from the filter" as required by all independent claims of the '175 Patent. The accused product does not infringe because, for example, it lacks the claimed "plurality of circumferential ridges."




'175 Patent, Fig. 6 (excerpt, emphasis added). The specification confirms that "the reducing coupling 110 has a first engaging member 120 with an external circumference 121 and an outer surface 123." *Id.* at 3:26–28. "The outer surface 123 can have a plurality of circumferential ridges to increase the contact effectiveness." *Id.* at 3:28–29. As set forth above, Defendant

amended independent claims 1 and 2 to require that the outer surface of the reducing coupling's first engaging member has "a plurality of circumferential ridges extending outwardly from the outer surface to engage an air intake port of a housing." The accused product has an outer surface that does not have any ridges:



K&N's NextGen Cold Air Intake System (Model No. 50-9039).

16. Further, by virtue of this amendment and statements made during the prosecution of the '175 Patent, Defendant is estopped from asserting that K&N's products infringe any claim of the '175 Patent under the DOE. Specifically, the Accused Product does not have—and may not be alleged to have__--for example, any component that is insubstantially different from, or serves the same function in the same way to achieve the same result as, the claimed "plurality of circumferential ridges."

17. A judicial declaration of non-infringement is necessary and appropriate so that K&N may continue manufacturing, marketing, and selling its performance intake products without ongoing injury or interference from Defendant.

**SECOND CAUSE OF ACTION**

**(Declaratory Judgment of Invalidity of the '175 Patent)**

18. K&N re-alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

19. Each claim of the '175 Patent is invalid for failure to satisfy the statutory conditions for patentability under Title 35 of the United States Code, including at least 35 U.S.C. §§ 101, 102, 103, and/or 112.

20. Particularly if the claims of the '175 Patent are construed broadly enough to encompass K&N's Accused Product, the claims are anticipated under 35 U.S.C. § 102 and/or obvious under 35 U.S.C. § 103 in view of prior art air intake assemblies, reducing collars, and filter interface structures known, used, or published prior to the priority date of the patent, believed to be its filing date, November 1, 2012.

21. Specifically, the invention is obvious, for example, in light of the teachings of either *Miyagishima* or *Dudley* with *Brown*. During prosecution, Defendant did not dispute that both *Miyagishima* and *Dudley* disclose all claim limitations.

22. However, the examiner noted that:

> *Brown* discloses a plurality of circumferential ridges being disposed on the outer surface of the first engaging member to engage the housing (plurality of circumferential ribs (ridges) are shown to be disposed on the interior outer surface of seal 60 (first engaging member) to engage axial portion of flange 74 of housing (housing), Fig. 2, col. 3, lines 63-66), as claimed.
>
> In order to provide an effective seal that will last (*Brown*, col. 2, lines 4–5), it would have been obvious to one or ordinary skill in the art at the time of the invention to modify the outer surface of the upstream engagement of *Dudley's* outlet adapter with *Brown's* ribbed surface because, as Dudley discloses, a highly effective air filtering capability requires effective sealing of the filter to the housing to prevent leakage of unfiltered air past the filter (*see Dudley*, col. 1, lines 23–31 ).

23. To overcome this rejection based on either *Miyagishima* or *Dudley* with *Brown*, the patentee thus narrowed the claims via amendment to require that the "plurality of circumferential ridges extending outwardly from the outer surface" are such that "the first engaging member outer surface extends outwardly from the filter" as required by all independent

claims of the ’175 Patent. The patentee then argued that *Brown’s* ribs are interior, while the claim specifically requires exterior ribs.

24. However, the ’175 patent itself confirms that both interior ridges and exterior ridges serve the same purpose, *i.e.*, to improve the seal by increasing the contact effectiveness: “The outer surface 123 can have a plurality of circumferential ridges to increase the contact effectiveness.” *Id.* at 3:28–29. “The inner surface 155 can have a plurality of circumferential ridges to increase the contact effectiveness to the surface 150 of the air intake tube 135.” *Id.* at 3:64–67. The examiner ignored this disclosure in error, and should have found the claims, even as amended, obvious in view of this teaching. On information and belief, a person of ordinary skill in the art would know that prior art ridges used to disclose contact effectiveness on an inner surface would similarly enhance contact effectiveness on an outer surface as disclosed by the ’175 patent itself. Thus, *Brown* renders this claim limitation obvious.

25. This is confirmed by the prior art generally. Circumferential ribs or ridges on a rubber or elastomeric sealing member were well known long before the ’175 Patent, and were known to improve the effectiveness of a seal. For example, Japanese Patent Publication No. H08-42767 (published February 16, 1996) teaches a group of circumferential ridges on a flexible rubber packing, explaining that the ridges concentrate the same clamping force on a smaller contact area, raising contact pressure and producing multiple sealing lines. Similarly, U.S. Patent No. 3,464,721 to *Surko* (issued September 2, 1969) (Exhibit 7) discloses a molded rubber connector with a stepped bore, secured to a rigid tube by a hose clamp, and an annular rib-and-groove portion on its <u>outer</u> surface that grips and seals against the tubing into which it is inserted. European Patent Application No. EP 1024875 (published August 9, 2000) (Exhibit 8) discloses an elastomeric collar fixed to an air filter cartridge and seated in a housing opening, in which ridges press the collar wall <u>outward</u> against the edge of the opening to form the seal. Thus, the prior art taught, before the ’175 Patent was filed, the use of circumferential ridges on flexible sealing members for the purpose of improving the seal, including on an outward facing surface. It also taught outward-facing ridges that seal a filter-side member against the opening of a housing. The claimed placement of ridges on the outer surface of the first engaging member,

where the surface contacts the housing, was therefore no more than the predictable use of a known sealing technique, to achieve a known result (to improve contact effectiveness, as acknowledged by the ’175 patent), in a known type of air filter coupling. Accordingly, the asserted claims would have been obvious under pre-AIA 35 U.S.C. § 103(a).

26. Furthermore, the claims of the ’175 Patent fail to comply with the written description, enablement, and/or definiteness requirements of 35 U.S.C. § 112. Specifically, the patent does not provide a description sufficient to enable a person of ordinary skill in the art to understand the term “ridges” with reasonable certainty, nor does it enable one to implement such “ridges” without undue experimentation to determine whether or not a given design meets the sole objective of “increase[ing] the contact effectiveness” the specification ascribes to this limitation.

27. A judicial declaration that the claims of the ’175 Patent are invalid is necessary and appropriate to resolve this actual controversy.

**JURY DEMAND**

28. Plaintiff K&N Engineering, Inc. hereby demands a trial by jury on all issues and claims so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant as follows:

A. Declaring that K&N Engineering, Inc., its officers, agents, distributors, and customers have not infringed, and do not infringe, directly or indirectly, any claim of the ’175 Patent;

B. Declaring that each claim of the ’175 Patent is invalid under 35 U.S.C. §§ 101, 102, 103, and/or 112;

C. Issuing a preliminary and permanent injunction restraining Defendant, its officers, agents, servants, employees, attorneys, and all persons acting in concert with them from asserting, threatening, or initiating any claim of patent infringement regarding the ’175 Patent against K&N or its customers;

D. Determining that this case is exceptional under 35 U.S.C. § 285 and awarding K&N its reasonable attorneys' fees, costs, and expenses incurred in this action; and

E. Awarding K&N such other and further relief as the Court deems just and proper.

Dated: 19 October 2026

By: _*/s/ Ahmad S. Takouche*_____________________

Erik Swenson (pro hac vice pending)
ESwenson@stradlinglaw.com
**STRADLING YOCCA CARLSON & RAUTH LLP**
500 W. 2nd Street, Suite 1900
Austin, TX 78701
Tel: (512) 788-5015

Ahmad S. Takouche (CA Bar # 322911)
ATakouche@stradlinglaw.com
**STRADLING YOCCA CARLSON & RAUTH LLP**
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Tel: (949) 725-4000

***Attorneys for Plaintiff K&N Engineering, Inc.***